**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SMILEY AUTO GROUP, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:23 CV 16333 |
| | ) | |
| VILLAGE OF MAYWOOD, JAMES KRISCHKE, | ) | |
| DARYL FAIRLEY, THEODORE YANCY, | ) | Honorable Sara L. Ellis |
| ANGELA SMITH, and WALTER DUNCAN, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S SECOND AMENDED COMPLAINT**

NOW COMES the Plaintiff, SMILEY AUTO GROUP, LLC, by its attorneys, NETZKY OLSWANG LAW GROUP LLC and complains of the Defendants, VILLAGE OF MAYWOOD, DARYL FAIRLEY, THEODORE YANCY, JAMES KRISCHKE, ANGELA SMITH, and WALTER DUNCAN as follows:

**SHORT STATEMENT OF THE CASE**

1. This cause arises under the constitution of the United States of America because Defendants engaged in activity prohibited by the Constitution of the United States because Defendants availed themselves as agents of the government evicting and seizing property of Plaintiff without due process of law. Counts I and II arise under the due process clauses of the United States Constitution because Defendants dispossessed plaintiff of property and possession of real estate without due process of law. Counts III and IV arise under the search and seizure clauses of the United States Constitution because Defendants as government agents seized property of Plaintiff without availing themselves of the power of the courts to dispossess the Plaintiff of occupancy and property. Count V sounds in inn wrongful eviction and count VI

sounds in trespass because without first evicting Plaintiff, Defendants entered upon property where plaintiff had a possessory right without availing themselves to the powers of a court of competent jurisdiction.

**The Parties**

2.      At all relevant times herein, the Plaintiff, Smiley Auto Group, LLC ("Smiley"), was and is a duly existing Illinois limited liability company.

3.      At all relevant times herein, the Defendant, Village of Maywood ("Maywood"), was and is an Illinois Home-Rule Community duly organized on October 22, 1881.

4.      At all relevant times herein, the Defendant, Daryl Fairley ("Fairley") was and is a citizen of the State of Illinois residing in Cook County. Fairley is currently employed as a Lieutenant with the Maywood Police Department.

5.      At all relevant times herein, the Defendant, James Krischke ("Krischke") was and is a citizen of the State of Illinois residing in Cook County. Krischke is currently employed by the Village of Maywood as its Village Manager.

6.      At all relevant times herein, the Defendant, Angela Smith ("Smith") was and is a citizen of the State of Illinois residing in Cook County. Smith is currently employed by the Village of Maywood as its Director of Community Development.

7.      At all relevant times herein, the Defendant, Theodore Yancy ("Yancy") was and is a citizen of the State of Illinois residing in Cook County. At all relevant times herein, Yancy was the acting Chief of Police for the Village of Maywood.

8.      At all relevant times herein, the Defendant, Walter Duncan ("Duncan") was and is a citizen of the State of Illinois residing in Cook County. Duncan is currently employed by the Village of Maywood as its Director of Building and Code. Fairley, Krischke, Yancy, Smith and

Duncan are herein collectively referred to as the "Individual Defendants".

## Jurisdiction and Venue

9. This action arises under the Article 4 and Article 14 of the United States Constitution. This Court has federal question jurisdiction in this action pursuant to 28 U.S.C. §1331 and state supplemental jurisdiction pursuant to 28 U.S.C. 1367. As part of the federal questions jurisdiction in this case is the treatment of abandoned property form a bankruptcy Estate thereafter purportedly distributed to the City of Maywood.

10. Venue is proper in this Judicial District under 28 U.S.C. §§ 1391(b) and (c) and § 1400(b) at least because all of the Defendants resides in this District.

## Facts Common to All Counts

### The Lease and Possession of the Premises

11. On or about February 27, 2018, Holdings Group LLC – Monroe 1 Holdings Group LLC, as authorized agent for the owner LLC 1 07CH12487 ("Owner") and Smiley entered into a Commercial Lease Agreement ("Lease") in connection with the premises located at 315 West Roosevelt, Maywood, Illinois ("Premises"). A copy of the Lease is attached hereto and made a part hereof as Exhibit A. After the initial term Plaintiff and Owner agreed to the continued occupancy by Plaintiff of the premises

12. Smiley took possession of the Premises in March, 2018, and operated a used car dealership at the Premises until January, 2022. During the subsequent holdover, the Owner agreed to Plaintiff's continued occupancy in exchange for maintenance of the property as rent.

13. On January 28, 2022, the sole member of Smiley assigned one hundred percent (100%) of his membership interest to LC Smiley Otto, an Arizona limited liability company ("Otto"). A copy of the Assignment of Interest is attached hereto and made a part hereof as

3

Exhibit B.

14.     Tiffany Webb ("Webb") is the Manager of both Smiley and Otto.

15.     After accepting the Assignment of Smiley's membership interest, Webb as Manager of Smiley took possession of the Premises.

16.     Since January of 2022, Webb as Manager of Smiley has moved various items of personal property into the Premises, including but not limited to brand new appliances, vehicles, clothing, various boxes of papers and files of Webb, Smiley and Otto.

17.     In order to protect and secure the Premises, Webb contracted with Frontpoint Security ("Frontpoint") to install and maintain an alarm system at the Premises.  Maywood and/or the Individual Defendants were well aware of Smiley and Webb's possession of the Premises as on numerous occasions the Village of Maywood Police were called to the Premises by Frontpoint due to the alarm bring tripped on a regular basis.

**The Premises is Purchased by Maywood**

18.     The Owner previously filed a Petition for Relief under Chapter 7 of the United States Bankruptcy Code Case #13-49315 ("Bankruptcy Case").  And pursuant to a motion before the Bankruptcy court to compel the Trustee to abandon the Premises from the bankruptcy estate, on 8/3/2016 the bankruptcy court ordered the abandonment of the Premises from the Bankruptcy Estate (Dkt #81).  A copy of said order is attached hereto as Exhibit D[1].  Thereafter, the subject lease was entered into between the Owner and Plaintiff. Upon completion of the initial term, the Owner consented to the holding over of the premises under terms which were satisfactory to Owner including having Plaintiff assume the costs of maintenance of the premises.

19.      Bruce de'Medici was appointed as Chapter 7 Trustee of the Owner's Bankruptcy

---

[1] Note the attached copy tendered to Tenant at time of the lease, by Owner contains the typical printing across the top of the page with the Bankruptcy Court's entry date and stamp.  This same order exists on the bankruptcy court system but does not currently print with the stamp.

Case.

20.     As part of his duties as Chapter 7 Trustee, de'Medici solicited bids to sell the Premises in order to recover monies for the creditors of Owner's estate even after the abandonment order.

21.     On July 19, 2023, the Bankruptcy Court entered an Order granting the sale of the Premises to Maywood for the price of $360,000.00.  However, with the previously ordered abandonment of the Premises from the Bankruptcy Estate, the Bankruptcy Trustee lacked the power to sell the real estate.

22.     On September 26, 2023, Maywood's purchase of the Premises closed and Maywood became the owner of the Premises.  A copy of the recorded Trustee's Deed that Maywood received at the closing of the Premises is attached hereto and made a part hereof as Exhibit C.

23.     The Chapter 7 Trustee was well aware that Smiley was occupying the Premises as he mentioned the Smiley lease of the Premises in various pleadings the Chapter 7 Trustee filed in the Bankruptcy Case.  At one point, the Chapter 7 Trustee even sought to take Webb's 2004 Examination in order to find out additional information regarding Smiley and its possession of the Premises.

24.     Upon information and belief, Maywood was aware that Smiley was in possession of the Premises since the Village Clerk for Maywood issued a Business License to Smiley in order for Smiley to operate its business at the Premises.  Furthermore, Smiley's Business License was renewed by the Village Clerk for Maywood on a yearly basis on at least two occasions.

**Self-Help Eviction**

25.     On October 2, 2023, various employees of Maywood, including members of the Maywood Police Department, Public Works, and Planning & Development appeared at the Premises and undertook to do a Self-Help Eviction. This self-help eviction was without the aid of either a court order or the Sheriff.  The Cook County Sheriff is the sole official that has the power to evict parties from real estate.

26.     The employees of Maywood unlawfully entered the Premises by breaking the lock which Webb had installed on the Premises.

27.     Employees of Maywood attempted to remove all of Smiley's personal property located at the Premises by disposing of it in a Village of Maywood dump truck.

28.     Maywood had a locksmith change the locks on the Premises so that Smiley and Webb are no longer able to access the Premises.

29.     Webb was not provided with any notice of an eviction nor was Webb or Smiley ever served with a Forcible Detainer Complaint.

30.     Webb only became aware of Maywood's illegal actions due to Maywood having disconnected the various cameras Webb had installed to allow her to remotely monitor the Premises and to protect it from being broken into.

31.     Upon arriving at the Premises on October 2, 2023, Webb and other representatives of Smiley were informed by Maywood Chief of Police Theodore Yancy to immediately leave the Premises or they will be arrested.

32.     Smiley has demanded that Maywood immediately place Smiley back into possession of the Premises but Maywood has refused and continues to refuse to give Smiley possession of the Premises which it is legally entitled to.

33.     Maywood claims that all personal property of Smiley and Webb that was removed from the Premises on October 2, 2023, was returned to the Premises, but won't articulate what property was returned or what property was not returned.

34.     Smiley and its Manager Webb have no way to verify what personal property is now missing from the Premises as they have not had any access to the Premises since October 2, 2023.

35.     Maywood refuses to allow Smiley access to the Premises and has advised Smiley that it will only allow Smiley to remove personal property from the Premises without providing documentation proving ownership and if Smiley is unable to establish ownership of its personal property rightfully at the Premises then Maywood will take necessary steps to declare the property as surplus property and dispose of it.

**COUNT I**
**(Article I, Section 2 of the Illinois Constitution – Due Process)**

36. Plaintiff incorporates Paragraphs 1 through 35 by reference as though fully alleged in this paragraph.

37. Article 1, Section 2 of the Illinois Constitution provides that "[n]o person shall be deprived of life, liberty or property without due process of law nor be denied the equal protection of the laws."

38. Maywood violated Smiley's due process in a myriad of ways. First, Maywood has denied Smiley possession of the Premises by breaking into the Premises and changing the locks so that Smiley can longer access the Premises.

39. Second, Maywood has deprived Smiley of its personal property including brand new appliances, vehicles, clothing, and various boxes of papers and files.

40. The Due Process Clause of the Illinois Constitution protects the rights of innocent

Illinoisans from being evicted by use of a Self-Help Eviction and thus being deprived of property rights without due process.

41. Maywood failed to make a demand for possession of the Premises on Smiley as well as trampled all over Smiley's rights by failing to file a Forcible Detainer Action which is what Illinois law requires in order to evict a tenant from a property, whether residential or commercial.

42. The Due Process Clause of the Illinois Constitution protects the rights of Illinoisans not to have their property taken before a final judgment has been entered.

43. The Due Process Clause of the Illinois Constitution prohibits the deprivation of property rights without adequate procedural protections.

44. Maywood's Self-Help Eviction violates the right to due process of law under the Illinois Constitution.

WHEREFORE, the Plaintiff, Smiley Auto Group, LLC, prays that this Honorable Court enter judgment in its favor and against the Defendant, Village of Maywood, as follows:

A) A declaratory judgment in favor of Plaintiff and against the Defendant that Plaintiff has a valid right to tenancy of the Premises and that Defendant has violated Plaintiff's right to due process when it undertook to evict the Plaintiff by use of a Self-Help Eviction;

B) Ordering the Defendant to immediately tender possession of the Premises to Plaintiff; Ordering that the Defendant is prohibited from further interfering with Plaintiff's right of quiet enjoyment of the Premises;

C. Compensatory damages in an exact amount to be proven at trial for the above-described violation of the Due Process Clause of the Illinois Constitution;

D. An award of Plaintiff's costs and expenses, together with reasonable attorneys' fees under the applicable Illinois rule and 42 U.S.C. 1988;

E. For punitive damages; and

F. For such other and further relief as this Court deems fair and just.

## COUNT II
### (Fifth and Fourteenth Amendment to the United States Constitution – Due Process)

45. Plaintiff incorporates Paragraphs 1 through 35 by reference as though fully alleged in this paragraph.

46. The Due Process Clauses of the Fifth and Fourteenth Amendment to the United States Constitution provides that no states shall "deprive any person of life, liberty or property without due process of law."

47. On October 2, 2023, Smiley had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive it of life, liberty or property.

48. Maywood and the Individual Defendants actions on October 3, 2023, were conducted in a manner which shocks the conscience, with deliberate indifference and/or reckless disregard for the life, liberty and property of Smiley.

49. The Individual Defendants were at the Premises on October 2, 2023, and all were involved in carrying out the Self-Help Eviction that took place on said date.

50. Maywood and the Individual Defendants have violated Smiley's due process in a myriad of ways.

51. First, Maywood and the Individual Defendants have denied Smiley possession of the Premises by breaking into the Premises and changing the locks so that Smiley can longer access the Premises.

52. Second, Maywood and the Individual Defendants have deprived Smiley of its personal property including brand new appliances, vehicles, clothing, and various boxes of

9

papers and files.

53. The Due Process Clause of the United States Constitution protects the rights of innocent people from being evicted by use of a Self-Help Eviction and thus being deprived of property rights without due process.

54. Maywood and the Individual Defendants failed to make a demand for possession of the Premises on Smiley as well as trampled all over Smiley's rights by failing to file a Forcible Detainer Action which is what Illinois law requires in order to evict a tenant from a property, whether residential or commercial.

55. The Due Process Clause of the United States Constitution protects the rights of people not to have their property taken before a final judgment has been entered. 56. The Due Process Clause of the United States Constitution prohibits the deprivation of property rights without adequate procedural protections.

57. Maywood and the Individual Defendants' Self-Help Eviction violates the right to due process of law under the United States Constitution.

58. On October 2, 2023, Maywood and the Individual Defendants violated the substantive due process rights of Smiley who had the right to be free from state actions that would deprive it of life, liberty, and property and which shock the conscience.

59. As a further direct and proximate result of the acts and omissions of Maywood and the Individual Defendants, including their violation of the constitutional rights of Smiley, Smiley has suffered damages and incurred attorneys' fees.

WHEREFORE, the Plaintiff, Smiley Auto Group, LLC, prays that this Honorable Court enter judgment in its favor and against the Defendants, VILLAGE OF MAYWOOD, DARYL FAIRLEY, THEODORE YANCY, JAMES KRISCHKE, ANGELA SMITH, and WALTER

10

DUNCAN, as follows:

A. declaratory judgment in favor of Plaintiff and against the Defendants that Plaintiff has a valid right to tenancy of the Premises and that Defendants have violated Plaintiff's right to due process when they undertook to evict the Plaintiff by use of a Self-Help Eviction; Ordering the Defendants to immediately tender possession of the Premises to Plaintiff;

B. Ordering that the Defendants are prohibited from further interfering with Plaintiff's right of quiet enjoyment of the Premises;

C. Compensatory damages against the Defendants in an exact amount to be proven at trial for the above-described violation of the Due Process Clause of the United States Constitution;

D. An award of Plaintiff's costs and expenses, together with reasonable attorneys' fees under the applicable Illinois rule and 42 U.S.C. 1988;

E. For punitive damages against the Individual Defendants; and

F. For such other and further relief as this Court deems fair and just.

## COUNT III
### (Article I, Section 6 of the Illinois Constitution – Search and Seizure Clause)

60. Plaintiff incorporates Paragraphs 1 through 35 by reference as though fully alleged in this paragraph.

61. The Search and Seizure Clause, Article 1, Section 6 of the Illinois Constitution provides that "The people shall have the right to be secure in their persons, houses, papers and other possessions against unreasonable searches, seizures, invasions of privacy or interception of communications by eavesdropping devices or other means."

62. A seizure occurs when there is some meaningful interference with a possessory

11

interest in property.

63. Maywood has denied Smiley possession of the Premises by breaking into the Premises and changing the locks so that Smiley can longer access the Premises.

64. Maywood in conjunction with the Village of Maywood Police Department has further trampled Smiley's rights under the Search and Seizure Clause by depriving Smiley of its personal property including brand new appliances, vehicles, clothing, and various boxes of papers and files.

65. The Search and Seizure Clause of Article I, Section 6 is not temporally limited.

66. Maywood failed to make a demand for possession of the Premises on Smiley as well as trampled all over Smiley's rights by failing to file a Forcible Detainer Action which is what Illinois law requires in order to evict a tenant from a property, whether residential or commercial.

67. Maywood's Self-Help Eviction is an unconstitutional seizure in violation of the Search and Seizure Clause of Article I, Section 6 of the Illinois Constitution.

WHEREFORE, the Plaintiff, Smiley Auto Group, LLC, prays that this Honorable Court enter judgment in its favor and against the Defendant, Village of Maywood, as follows:

A. A declaratory judgment in favor of Plaintiff and against the Defendant that Plaintiff has a valid right to tenancy of the Premises and that Defendant has violated Plaintiff's right to due process when it undertook to evict the Plaintiff by use of a Self-Help Eviction;

B. Ordering the Defendant to immediately tender possession of the Premises to Plaintiff; Ordering that the Defendant is prohibited from further interfering with Plaintiff's right of quiet enjoyment of the Premises;

C. Compensatory damages in an exact amount to be proven at trial for the above-

described violation of the Search and Seizure Clause of the Illinois Constitution;

**D.** An award of Plaintiff's costs and expenses, together with reasonable attorneys' fees under the applicable Illinois rule and 42 U.S.C. 1988;

**E.** For punitive damages; and

**F.** For such other and further relief as this court determines just and equitable.

**COUNT IV**
**(Fourth Amendment to the United States Constitution – Search and Seizure Clause)**

68. Plaintiff incorporates Paragraphs 1 through 35 by reference as though fully alleged in this paragraph.

69. The Fourth Amendment to the United States Constitution provides that "The people shall have the right to be secure in their persons, houses, papers and effects against unreasonable searches and seizures, shall not be violated, ..."

70. A seizure occurs when there is some meaningful interference with a possessory interest in property.

71. Maywood has denied Smiley possession of the Premises by breaking into the Premises and changing the locks so that Smiley can longer access the Premises.

72. Maywood in conjunction with the Village of Maywood Police Department has further trampled Smiley's rights under the Search and Seizure Clause by depriving Smiley of its personal property including brand new appliances, vehicles, clothing, and various boxes of papers and files.

73. The Search and Seizure Clause of the Fourth Amendment is not temporally limited.

74. Maywood failed to make a demand for possession of the Premises on Smiley as well as trampled all over Smiley's rights by failing to file a Forcible Detainer Action which is what Illinois law requires in order to evict a tenant from a property, whether residential or commercial.

13

75. Maywood's Self-Help Eviction is an unconstitutional seizure in violation of the Search and Seizure Clause of the Fourth Amendment to the United States Constitution.

WHEREFORE, the Plaintiff, Smiley Auto Group, LLC, prays that this Honorable Court enter judgment in its favor and against the Defendant, Village of Maywood, as follows:

A. A declaratory judgment in favor of Plaintiff and against the Defendant that Plaintiff has a valid right to tenancy of the Premises and that Defendant has violated Plaintiff's right to due process when it undertook to evict the Plaintiff by use of a Self-Help Eviction;

B. Ordering the Defendant to immediately tender possession of the Premises to Plaintiff;

C. Ordering that the Defendant is prohibited from further interfering with Plaintiff's right of quiet enjoyment of the Premises;

D. Compensatory damages in an exact amount to be proven at trial for the above-described violation of the Search and Seizure Clause to the United States Constitution;

E. An award of Plaintiff's costs and expenses, together with reasonable attorneys' fees under the applicable Illinois rule and 42 U.S.C. 1988;

F. For punitive damages; and For such other and further relief as this Court deems fair and                                                                                          just.


**COUNT V**
**Wrongful Eviction**

76. Plaintiff incorporates Paragraphs 1 through 35 by reference as though fully alleged in this paragraph.

77. Maywood became the owner of the Premises on September 26, 2023.

78. Shortly after it became owner of the Premises, Maywood removed Smiley's locks and replaced them with their own locks and did not provide Smiley with keys which would allow it to access the Premises.

79. Maywood never served either Smiley or Webb with a Demand for Possession or any type of notice to vacate the Premises.

80. Maywood did not file a Forcible Detainer Action against Smiley in connection with the Premises.

81. Maywood opted to instead use officers from the Maywood Police Department to carry out its Self-Help Eviction of the Premises.

82. In Cook County, only the Sheriff's Office is authorized to conduct evictions but only after the proper Order for Eviction is entered by one of the Judges presiding over Forcible Detainer Actions in Cook County.

83. Maywood had no legal basis whatsoever to enter the Premises, change the locks, nor dispose of any of the property stored therein of Smiley or its Manager Webb.

84. Smiley has suffered significant damages as a result of Maywood's wrongful eviction of Smiley from the Premises.

WHEREFORE, the Plaintiff, Smiley Auto Group, LLC, prays that this Honorable Court enter judgment in its favor and against the Defendant, Village of Maywood, as follows:

A. Compensatory damages in an amount to be proven at trial;

B. For attorney's fees and costs associated with this action; and

C. For such other and further relief as this Court deems fair and just.

## COUNT VI
### Trespass

85. Plaintiff incorporates Paragraphs 1 through 35 by reference as though fully alleged in

this paragraph.

86. Maywood became the owner of the Premises on September 26, 2023.

87. Shortly after it became owner of the Premises, Maywood removed Smiley's locks and replaced them with their own locks and did not provide Smiley with keys which would allow it to access the Premises.

88. On October 2, 2023, numerous employees of Maywood went to the Premises with the clear intention of disposing of Smiley's property.

89. Had Webb not gone to the Premises on October 2, 2023, all of the property of Smiley and Webb at the Premises would have been disposed of.

90. Maywood did not file a Forcible Detainer Action against Smiley in connection with the Premises.

91. Maywood is liable for trespass as it caused a thing or a third person to enter the Premises of Smiley through an intentional act.

92. Even though Maywood was the owner of the Premises, Maywood had no legal basis to allow it to enter the Premises

93. Neither Smiley nor its Manager Webb gave Maywood permission to enter the Premises.

94. Smiley has suffered significant damages as a result of Maywood's intentional trespass into Smiley's right to quiet enjoyment of the Premises.

WHEREFORE, the Plaintiff, Smiley Auto Group, LLC, prays that this Honorable Court enter judgment in its favor and against the Defendant, Village of Maywood, as follows:

A. Compensatory damages in an amount to be proven at trial;

B. For attorney's fees and costs associated with this action; and

C.  For such other and further relief as this Court deems fair and just.

**COUNT VII**
**Conversion**

95. Plaintiff incorporates Paragraphs 1 through 35 by reference as though fully alleged in this paragraph.

96. Maywood became the owner of the Premises on September 26, 2023.

97. Shortly after it became owner of the Premises, Maywood removed Smiley's locks and replaced them with their own locks and did not provide Smiley with keys which would allow it to access the Premises.

98. Smiley and its Manager Webb have a substantial amount of personal property located at the Premises including brand new appliances, vehicles, clothing, and various boxes of papers and files.

99. The personal property belongs to Smiley and/or its Manager Webb and accordingly have a right to the property.

100. Smiley and/or its Manager Webb has an immediate, absolute, and unconditional right to possession of its personal property located at the Premises.

101. By virtue of changing the locks at the Premises and locking Smiley out, Maywood has exercised an unauthorized and wrongful assumption of control, dominion, and ownership over Smiley's personal property at the Premises.

102. Smiley has demanded that Maywood immediately place Smiley back into possession of the Premises but Maywood has refused and continues to refuse to give Smiley possession of the Premises which it is legally entitled to.

103. Smiley has demanded that Maywood immediately return all of its personal property located at the Premises but Maywood has refused and continues to refuse to return the personal

17

property which Smiley is legally entitled to.

104. Smiley has suffered significant monetary damages as a result of Maywood's conversion of Smiley's personal property located at the Premises.

WHEREFORE, the Plaintiff, Smiley Auto Group, LLC, prays that this Honorable Court enter judgment in its favor and against the Defendant, Village of Maywood, as follows:

A. Compensatory damages in an exact amount to be proven at trial;

B. For attorney's fees and costs associated with this action; and

C. For such other and further relief as this Court deems fair and just.

DEMAND FOR JURY TRIAL Now comes Plaintiff, Smiley Auto Group LLC, by and through its attorneys, Netzky Olswang Law Group, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Respectfully submitted,

SMILEY AUTO GROUP LLC

By: */s/ Daniel Olswang*
        One of its Attorneys

Netzky Olswang Law Group
8605 West Bryn Mawr, Suite 309
Chicago, Illinois 60631
Direct: (847) 224-1169
dan@no-lawgroup.com

## CERTIFICATE OF SERVICE

I, Daniel Olswang, an attorney, certify that I caused a true and correct copy of Plaintiff's First Amended Complaint to be served electronically pursuant to ECF upon the following on December 12, 2024:

Klein, Thorpe and Jenkins, Ltd.
120 S. LaSalle Street, Suite 1710
Chicago, IL 60603

By: */s/ Robert T. Hanlon*
One of Plaintiff's Attorneys

Netzky Olswang Law Group
8605 West Bryn Mawr, Suite 309
Chicago, Illinois 60631
Direct: (847) 224-1169
dan@no-lawgroup.com

# EXHIBIT A

**Commercial Lease Agreement**

THIS LEASE is dated this 2nd day of February 2018.

BETWEEN:     HOLDINGS GROUP LLC-MONROE 1 HOLDINGS GROUP LLC; A LLC
             (Collectively the "Landlord")

AND SMILEY AUTO GROUP, LLC; BUJAR ISMAJLAJ AND MUKADEM M. ISMAILJI
             (Collectively the "Tenant")

IN CONSIDERATION OF the Landlord leasing certain premises to the Tenant, the Tenant leasing those premises from the Landlord and the mutual benefits and obligations set forth in this Lease, the receipt and sufficiency of which consideration is hereby acknowledged, the parties to this Lease agree as follows:

1.   **Basic Terms:** The following basic terms are hereby approved by the parties and each reference in this Lease to any of the basic terms will be construed to include the provisions set forth below as well as all of the additional terms and conditions of the applicable sections of this Lease where such basic terms are more fully set forth:

     a.   Landlord: HOLDINGS GROUP LLC-MONROE 1 HOLDINGS GROUP LLC; A LLC

     b.   Address of Landlord: 111 W WASHINGTON, SUITE 1020, CHICAGO, IL 60602

     c.   Tenant: SMILEY AUTO GROUP, LLC.; BUJAR ISMAJLAJ AND MUKADEM M. ISMAILJI

     d.   Address of Tenant: 9000 W. OGDEN AVE BROOKFIELD, IL 60513

     e.   Premises: 315 W ROOSEVELT RD, MAYWOOD, IL 60153

     f.   Term of Lease: One Year

     g.   Execution Date of Lease: FEBRUARY 16, 2018

     h.   Commencement Date of Lease: MARCH 1, 2018

     i.   Rent: $6,500.00 per month, paid on or prior to the 1st day of each month.

     j.   Commencement of Rent: APRIL 1, 2018

     k.   Upfront payment: $13,000.00 CONSISTING OF FIRST AND LAST MONTH RENTS DUE UPON LEASE SIGNING.

     l.   Permitted Use of Premises: Automotive Sales.

     m.   Security/Damage Deposit $0.0.

2.   Definitions: When used in this Lease, the following expressions will have the meanings indicated:

     a.   "Building" means all buildings, improvements, equipment, fixtures, property and facilities located at 315 W ROOSEVELT RD, MAYWOOD, IL 60153. The tenant accepts the property "as is/where is" and assumes full and complete responsibility for the build out and construction of all necessary mechanical systems, including plumbing, electrical and HVAC as well as all other necessary construction/rehabilitation of the building. The tenant shall complete the rehabilitation of the building and obtain all necessary lien waivers from contractors.

3.   Leased Premises

     a.   The Landlord agrees to rent to the Tenant the Premises and for only the permitted use of an Automotive Sales on the premises (the "Permitted Use"). Neither the Premises nor any part of the Premises will be used at any time

during the term of this Lease by Tenant for any purpose other than the Permitted Use without the expressed written consent of the landlord.

b.  The Landlord reserves the right for itself and for all persons authorized by it, to erect, use and maintain wiring, pipes and conduits and other means of distributing services in and through the Premises, and at all reasonable times to enter upon the Premises for the purpose of installation, maintenance or repair, and such entry will not be an interference with the Tenant's possession under this Lease.

c.  The Landlord reserves the right, when necessary by reason of an accident or in order to make repairs, alterations or improvements relating to the Premises to cause temporary obstruction to the Premises as reasonably necessary and to interrupt or suspend the supply of electricity, water and other services to the Premises until the repairs, alterations or improvements have been completed. There will be no abatement in rent because of such obstruction, interruption or suspension provided that the repairs, alterations or improvements are made expeditiously as is reasonably possible.

4.  <u>Term</u>: The initial term of the Lease is one year beginning on the commencement date.

5.  <u>Rent</u>: Subject to the provisions of this Lease, the Tenant will pay to the Landlord rent for the Premises ("Rent"), as specified in <u>paragraph 1</u> above, on or before the first day of every month of the term of this Lease.

6.  <u>Taxes</u>: TENANT NOT RESPONSIBLE FOR ANY REAL ESTATE TAXES

a.  ~~The Tenant will pay to the Landlord 100% of all pro-rata real property taxes, rates, duties, levies and assessments which are levied, rated, charged, imposed or assessed by any lawful taxing authority (whether federal, state, district, municipal, school or otherwise) against the Building and the land or any part thereof from time to time or any taxes payable by the Landlord which are charged in lieu thereof or in addition thereto, but excluding income tax upon the income of the Landlord to the extent that such taxes are not levied in lieu of real property taxes against the Building or upon the Landlord in respect thereof. Tenant will pay in addition to the monthly rent, on a monthly basis 1/12th of the last ascertainable tax bill to the landlord. Tenant is only responsible for $60,000 per year; the balance is the responsibility of the Landlord.~~

b.  ~~The Landlord will deliver promptly to the Tenant a copy of the tax bill or separate assessment notices for the Premises. Within 21 days of receipt of such tax bill, any credit due to tenant by landlord or amount owed by tenant to landlord will be properly calculated and adjusted accordingly.~~

7.  <u>Use and Occupation</u>: The Tenant will use and occupy the Premises only for the Permitted Use and for no other purpose whatsoever. The Tenant covenants that the Tenant will carry on and conduct its business from time to time carried on upon the Premises in such manner as to comply with all statutes, bylaws, rules and regulations of any federal, provincial, municipal or other competent authority and will not do anything on or in the Premises in contravention of any of them.

8.  <u>Security Deposit</u>: The Tenant will pay the Landlord the amount of $0.00 as security deposit to be held by the Landlord without interest and to be applied on account of a default in the payment of Rent as it falls due and to be held to the extent not so applied as security for any which may be applied by the Landlord to the performance of the covenants and obligations of the Tenant under this Lease.

9.  <u>Quiet Enjoyment</u>: The Landlord covenants that on paying the Rent and performing the covenants contained in this Lease, the Tenant will peacefully and quietly have, hold and enjoy the Premises for the agreed term.

10.  <u>Default</u>

a.  <u>Monetary Default</u>: If the Tenant is in default in the payment of any money, whether hereby expressly reserved or deemed as rent, or any part thereof, and such default continues following any specific due date on which the Tenant is to make such payment, or in the absence of such specific due date, for the five (5) days following written notice by the Landlord requiring the Tenant to pay the same then, at the option of the Landlord, this Lease may be terminated upon three (3) days notice and the term will then immediately become forfeited and void, and the Landlord may, without further notice or any form of legal process whatever, forthwith reenter the Premises or any part thereof and

in the name of the whole repossess and enjoy the same as of its former state, anything contained herein or in any statute or law contrary notwithstanding.

b.  **Non-Monetary Default:** Unless otherwise provided for in this Lease, if the Tenant does not observe, perform and keep each and every of the non-monetary covenants, agreements, stipulations, obligations, conditions, and other provisions of this Lease to be observed performed and kept by the Tenant and persists in such default, after twenty-one (21) days following written notice from the Landlord requiring that the Tenant remedy, correct or comply or, in the case of such default which would reasonably require more than twenty-one (21) days to rectify, unless the Tenant will commence rectification within the said twenty-one (21) days notice period and thereafter promptly and diligently and continuously proceed with the rectification of any such defaults then, at the option of the Landlord, this Lease may be terminated upon ten (10) days notice and the term will then immediately become forfeited and void, and the Landlord may, without further notice or any form legal process whatever, forthwith reenter the Premises or any part there of and in the name of the whole repossess and enjoy the same as of its former state, anything contained herein or in any statute or law to the contrary notwithstanding.

c.  If and whenever:

    i.  the Tenant's leasehold interest hereunder, or any goods, chattels or equipment of the Tenant located in the Premises will be taken or seized in execution or attachment , or if any writ of execution will issue against the Tenant or the Tenant will become insolvent or commit an act of bankruptcy or become bankrupt or take the benefit of any legislation that may be in force for bankrupt or insolvent debtor or become involved in voluntary or involuntary winding up, dissolution or liquidation proceedings, or if a receiver will be appointed for the affairs, business, property or revenues of the Tenant or

    ii.  the Tenant fails to commence, diligently pursue and complete the Tenant's work to be performed pursuant to any agreement to lease pertaining to the Premises or vacate or abandon the Premises, or fail or cease to operate or otherwise cease to conduct business from the Premises, or use or permit or suffer the use of the Premises for any purpose other than as permitted herein, or make a bulk sale of its goods and assets which has not been consented to by the Landlord, or move or commence, attempt or threaten to move its goods, chattels and equipment out of the Premises other than in the routine course of its business;

    iii.  then, and in each such case, at the option of the Landlord, this Lease may be terminated without notice and the term will then immediately become forfeited and void, and the Landlord may without notice or any form of legal process whatever forthwith reenter the Premises or any part thereof and in the name of the whole repossess and enjoy the same and its former state anything contained herein or in any statute or law to the contrary notwithstanding.

d.  In the event that the Landlord has terminated the Lease pursuant to this section, on the expiration of the time fixed in the notice, if any, this Lease and the right, title, and interest of the Tenant under this Lease will terminate in the same manner and with the same force and effect, except as to the Tenant's liability, as if the date fixed in the notice of cancellation and termination were the end of the Lease.

11.  **Over holding:**

a.  If the Tenant continues to occupy the Premises with the written consent of the Landlord after the expiration or other termination of the term, then, without any further written agreement, the Tenant will be a month-to-month tenant at a minimum rental equal to twice the Rent and subject always to all of the other provisions of this Lease insofar as the same are applicable to a month-to-month tenancy and a tenancy from year to year will not be created by implication of law.

b.  If the Tenant continues to occupy the Premises without the written consent of the Landlord at the expiration or other termination of the term, then the Tenant will be a tenant at will and will pay to the Landlord, as liquidated damages and not as Rent, an amount equal to twice the Rent plus any Additional Rent during the period of such occupancy accruing from day to day and adjusted pro rata accordingly, and subject always to all the other provision of this Lease insofar as they are applicable to a tenancy at will and a tenancy from month-to-month or from year to year will not be created by implication of law, provided that nothing herein contained will preclude the Landlord from taking

action for recovery of possession of the Premises.

12. Additional Rights and Reentry: If the Landlord reenters the Premises or terminates this Lease, then:

a. Notwithstanding any such termination or the term thereby becoming forfeited and void, the provisions of this Lease relating to the consequences of termination will survive;

b. The Landlord may use such reasonable force as it may deem necessary for the purpose of gaining admittance to and retaking possession of the Premises and the Tenant hereby releases the Landlord from all actions, proceedings, claims and demands whosoever for and in respect of any such forcible entry or any loss or damage in connection therewith or consequential thereupon;

c. The Landlord may expel and remove, forcibly, if necessary, the Tenant, those claiming under the Tenant and their effects, as allowed by law, without being taken or deemed to be guilty of any manner of trespass;

d. In the event that the Landlord has removed the property of the Tenant, the Landlord may store such property in a public warehouse or at a place selected by the Landlord, at the expense of the Tenant. If the Landlord feels that it is not worth storing such property given its value and the cost to store it, then the Landlord may dispose of such property in its sole discretion and use such funds, if any, towards any indebtedness of the Tenant to the Landlord. The Landlord will not be responsible to the Tenant for the disposal of such property other than to provide any balance of the proceeds to the Tenant after paying any storage costs and any amount owed by the Tenant to the Landlord;

e. The Landlord may relet the Premises or any part thereof for a term or terms which may be less or greater than the balance of the term of this Lease remaining and may grant reasonable concessions in connection therewith including any alterations and improvements to the Premises;

f. After reentry, the Landlord may procure the appointment of a receiver to take possession and collect rents and profits of the business of the Tenant, and if necessary to collect the rents and profits the receiver may carry on the business of the Tenant and take possession of the personal property used in the business of the Tenant, including inventory, trade fixtures, and furnishing, and use them in the business without compensating the Tenant;

g. After reentry, the Landlord may terminate the Lease on giving three (3) days written notice of termination to the Tenant. Without this notice, reentry of the Premises by the Landlord or its agents will not terminate this Lease; and

   i. The Tenant will pay to the Landlord on demand:

      1. All rent, Additional Rent and other amounts payable under this Lease upon to the time of reentry or termination, whichever is later

      2. Reasonable expenses as the Landlord incurs or has incurred in connection with the reentering, terminating, reletting, collecting sums due or payable by the Tenant, realizing upon assets seized, including without limitation, brokerage, fees and expenses and legal fees and disbursements and the expenses for keeping the Premises in good order, repairing the same and preparing them for reletting; and

      3. As liquidated damages for the loss of rent and other income of the Landlord expected to be derived from this Lease during the period which would have constituted the unexpired portion of the term had it not been terminated, at the option of the Landlord, either:

h. An amount determined by reducing to present worth at an assumed interest rate of six percent (6%) per annum all Rent and estimated Additional Rent to become payable during the period which would have constituted the unexpired portion of the term, such determination to be made by the Landlord, who may make reasonable estimates of when any such other amounts would have become payable and may make such other assumptions of the facts as may be reasonable in the circumstances; or

i.   An amount equal to the Rent and estimated Additional Rent for a period of six (6) months.

13.   **Inspections:** At all reasonable times during the term of this Lease and any renewal of this Lease, the Landlord and its agents may enter the Premises to make inspections or repairs, or to show the Premises to prospective tenants or purchasers.

14.   **Signs:** The Tenant may erect, install and maintain a sign of a kind and size in a location, all in accordance with the Landlord's design criteria for the Building and as first approved in writing by the Landlord. All other signs, as well as the advertising practices of the Tenant, will comply with all applicable rules and regulation of the Landlord. The Tenant will not erect, install or maintain any sign other than in accordance with this section.

15.   **Tenant's Insurance:**

a.   The Tenant will, during the whole of the term and during such other time as the Tenant occupies the Premises, take out and maintain the following insurance, at the Tenant's sole expense, in such form as used by reputable insurance companies acceptable to Landlord:

  i.   Comprehensive general liability insurance against claims for bodily injury, including death, and property damage or loss arising out of the use or occupation of the Premises, or the Tenant's business on or about the Premises; such insurance to be in the joint name of the Tenant and the Landlord so as to indemnify and protect both the Tenant and the Landlord and to contain a "cross liability" and "severability of interest" clause so that the Landlord and the Tenant may be insured in the same manner and to the same extent as if individual policies had been issued to each, and will be for the amount of not less than $3,000,000.00 *1,000,000* combined single limit or such other amount as may be reasonably required by the Landlord form time to time; such comprehensive general liability insurance will for the Tenant's benefit only include contractual liability insurance in a form and of a nature broad enough to insure the obligations imposed upon the Tenant under the terms of this Lease.

  ii.   All risks insurance upon its merchandise, stock-in-trade, furniture, fixtures and improvements and upon all other property in the Premises owned by the Tenant or for which the Tenant is legally liable, and insurance upon all glass and plate glass in the Premises against breakage and damage from any cause, all in an amount equal to the full replacement value thereof, which amount in the event of a dispute will be determined by the decision of the Landlord. In the event the Tenant does not obtain such insurance, it is liable for the full costs of repair or replacement of such damage or breakage.

  iii.   ~~Boiler and machinery insurance on such boilers and pressure vessels as may be installed by, or under the exclusive control of the Tenant in the Premises.~~

The Tenant's policies of insurance hereinbefore referred to will contain the following:

  i.   Provisions that the Landlord is protected notwithstanding any act, neglect or misrepresentation of the Tenant which might otherwise result in the avoidance of claim under such policies will not be affected or invalidated by any act, omission or negligence of any third party which is not within the knowledge or control of the insured(s);

  ii.   Provisions that such policies and the coverage evidenced thereby will be primary and non-contributing with respect to any policies carried by the Landlord and that any coverage carried by the Landlord will be excess coverage;

  iii.   All insurance referred to above will provide for waiver of the insurer's rights of subrogation as against the Landlord; and

  iv.   Provisions that such policies of insurance will not be cancelled without the insurer providing the Landlord thirty (30) days written notice stating when such cancellation will be effective.

c.   The Tenant will further maintain during the whole of the term such other insurance in such amounts and in such sums as the Landlord may reasonably determine from time to time, in particular, Dram Shop Insurance. Evidence

satisfactory to the Landlord of all such policies of insurance will be provided to the Landlord upon request.

d. The Tenant will not do, omit or permit to be done or omitted upon the Premises anything which will cause any rate of insurance upon the Building or any part thereof to be increased or cause such insurance to be cancelled. If any such rate of insurance will be increased as aforesaid, the Tenant will pay to the Landlord the amount of the increase as Additional Rent. If any insurance policy upon the Building or any part thereof is cancelled or threatened to be cancelled by reason of the use or occupancy by the Tenant or any act or omission as aforesaid, the Tenant will immediately remedy or rectify such use, occupation, act or omission upon being requested to do so by the Landlord, and if the Tenant fails to so remedy or rectify, the Landlord may at its option terminate this Lease and the Tenant will immediately deliver up possession of the Premises to the Landlord.

16. ~~Landlord's Insurance:~~

a. ~~The Landlord will take out or cause to be taken out and keep or cause to be kept in full for and effect during the whole of the Term:~~

i. ~~Extended fire and extended coverage insurance on the Building, except foundations, on a replacement cost basis, subject to such deductions and exceptions as the Landlord may determine, such insurance will be in a form or forms normally in use from time to time for building and improvements of a similar nature similarly situate, including, should the Landlord so elect, insurance to cover any loss of rental income which may be sustained by the Landlord; and~~

ii. ~~Comprehensive general liability insurance against claims for bodily injury, including death and property damage in such form and subject to such deductions and exception as the Landlord may determine, provided that nothing herein will prevent the Landlord from providing or maintaining such lesser, additional or broader coverage as the Landlord may elect in its discretion.~~

b. ~~The Landlord agrees to request its insurers, upon written request of the Tenant, to have all insurance taken out and maintained by the Landlord to provide for waiver of the Landlord's insurer's rights of subrogation against the Tenant when and to the extent permitted from time to time by its insurers.~~

17. Abandonment: If at any time during the term of this Lease, the Tenant abandons the Premises, the Landlord may, at its option, enter the Premises by any means without being liable for any prosecution for such entering, and without becoming liable to the Tenant for damages or for any payment of any kind whatever, and may, at the Landlord's discretion, as agent for the Tenant, relet the Premises, or any part of the Premises, for the whole or any part of the then unexpired term, and may receive and collect all rent payable by virtue of such reletting, and, at the Landlord's option, hold the Tenant liable for any difference between the Rent that would have been payable under this Lease during the balance of the unexpired term, if this Lease had continued in force, and the net rent for such period realized by the Landlord by means of the reletting. If the Landlord' right of reentry is exercised following abandonment of the premises by the Tenant, then the Landlord may consider any personal property belonging to the Tenant and left on the Premises to also have been abandoned, in which case the Landlord may dispose of all such personal property in any manner the Landlord will deem proper and is relieved of all liability for doing so.

18. Subordination and Attornment:

a. This Lease and the Tenant's rights hereunder will automatically be subordinate to any mortgage or mortgages, or encumbrance resulting from any other method of financing or refinancing, now or hereafter in force against the Lands or Building or any part thereof, as now or hereinafter constituted, and to all advances made or hereafter to be made upon the security thereof, and, upon the request of the Landlord, the Tenant will execute such documentation as may be required by the Landlord, the Tenant will execute such documentation as may be required by the Landlord in order to confirm and evidence such subordination.

b. The Tenant will, in the event of any proceedings are brought, whether in foreclosure or by way of the exercise of the power of sale or otherwise, under any other mortgage or other method of financing or refinancing made by the Landlord in respect of the Building, or any portion thereof, attorn to the encumbrancer upon any such foreclosure or sale and recognize such encumbrancer as the Landlord under this Lease, but only if such encumbrancer should so elect and require.

c. Upon the written request of the Tenant, the Landlord agrees to request any mortgagee or encumbrancer of the Lands (present or future) to enter into a non-disturbance covenant in favor of the Tenant, whereby such mortgagee or encumbrancer will agree not to disturb the Tenant in its possession and enjoyment of the Premises for so long as the Tenant is not in default under this Lease.

19. Estoppel Certificate and Acknowledgment: Whenever required by the Landlord, a mortgagee or any other encumbrance holder or other third party having an interest in the Building or any part thereof, the Tenant will, within five(5) days of the request, execute and deliver an estoppel certificate or other form of certified Acknowledgment as to the Commencement Date, the status and the validity of this Lease, the state of the rental account hereunder, any incurred defaults on the part of the Landlord alleged by the Tenant, and such other information as may reasonably be required.

20. Sale by Landlord: In the event of any sale, transfer or lease by the Landlord of the Building or any interest therein or portion thereof containing the Premises or assignment by the Landlord of this Lease or any interest of the Landlord therein to the extent that the purchaser, transferee, tenant or assignee assumes the covenants and obligations of the Landlord under this Lease, the Landlord will without further written agreement be freed and relieved of liability and relieved of liability under such covenants and obligations. This Lease may be assigned by the Landlord to any mortgagee or encumbrance of the Building as security.

21. Tenant's Indemnity:

a. The Tenant will and does hereby indemnify and save harmless the Landlord of and from all loss and damage and all actions, claims, costs, demands, expenses, fines, liabilities and suits of any nature whatsoever for which the Landlord will or may become liable, incur or suffer by reason of a breach, violation or nonperformance by the Tenant of any covenant, term or provision hereof or by reason of any builder's or other liens for any work done or materials provided or services rendered for alterations, improvements or repairs, made by or on behalf of the Tenant to the Premises, or by reason of any injury occasioned to or suffered by any person or damage to any property, or by reason of any wrongful act or omission, default or negligence on the part of the Tenant or any of its agents, concessionaires, contractors, customers, employees, invitees or licensees in or about the building.

b. It is agreed between the Landlord and the Tenant that the Landlord will not be liable for any loss, injury, or damage to persons or property resulting from falling plaster, steam, electricity, water, rain, snow or dampness, or from any other cause.

c. It is agreed between the Landlord and the Tenant that the Landlord will not be liable for any loss, injury or damage cause to persons using the Premises or to vehicles or their contents or any other property on the, or for any damage to property entrusted to its or their employees, or for the loss of any property by theft or otherwise, and all property kept or stored in the Premises will be at the sole risk of the Tenant.

d. It is agreed between the Landlord and the Tenant that the Landlord will not be liable for any consequential or indirect damage suffered by the Tenant.

22. Liens: The Tenant will immediately upon demand by the Landlord remove or cause to be removed and thereafter institute and diligently prosecute any action pertinent thereto, any builder's or other lien or claim of lien noted or filed against or otherwise constituting an encumbrance on any title of the Landlord. Without limiting the foregoing obligations of the Tenant, the Landlord may cause the same to be removed, in which case the Tenant will pay to the Landlord as Additional Rent, the cost thereof including the Landlord's legal cost.

23. Governing Law: This Lease and the tenancy created by this Lease and the performance under this Lease, and all suits and special proceedings under this Lease, shall be construed in accordance with and governed, to the exclusion of the law of any other forum, by the laws of the State of Illinois, without regard to the jurisdiction in which any action or special proceeding may be instituted. Any dispute which arises as a result of this Lease shall be brought in a court of competent jurisdiction with sites located in Cook County, Illinois.

24. Severability:

a. If there is a conflict between any provision of this Lease and the applicable legislation of the State of Illinois (the "Act"), the Act will prevail and such provisions of the Lease will be amended or deleted as necessary in order to

comply with the Act. Further, any provisions that are required by the Act are incorporated into this Lease.

b. If there is a conflict between any provision of this Lease and any form of lease prescribed by the Act, that prescribed form will prevail and such provisions of the lease will be amended or deleted as necessary in order to comply with that prescribed form. Further, any provisions that are required by that prescribed form are incorporated into this Lease.

25. **Amendment of Lease**: Any amendment or modification of this Lease or additional obligation assumed by either party in connection with this Lease will only be binding if evidenced in writing signed by each party or an authorized representative of each party.

26. **Damage to Premises**: If the Premises, or any part of the Premises, will be partially damaged by fire or other casualty not due to the Tenant's negligence or wilful act or that of the Tenant's employee, family, agent, or visitor, the Premises will be promptly repaired by the Landlord and there will be an abatement or rent corresponding with the time during which, and the extent to which, the Premises may have been untenantable. However, if the Premises should be damaged other than by the Tenant's negligence or wilful act or that of the Tenant's employee, family, agent, or visitor to the extent that the Landlord will decide not to rebuild or repair, the term of this Lease will end and the Rent will be prorated up to the time of the damage.

27. **Eminent Domain and Expropriation**: If during the term of this Lease, title is taken to the whole or any part of the Building by any competent authority under the power of eminent domain or by expropriation, which taking, in the reasonable opinion of the Landlord, does not leave a sufficient remainder to constitute an economically viable building, the Landlord may at its option, terminate this Lease on the date possession is taken by or on behalf of such authority. Upon such termination, the Tenant will immediately deliver up possession of the Premises, Rent and any Additional Rent will be payable up to the date of such termination, and the Tenant will be entitled to be repaid by the Landlord any rent paid in advance and unearned or an appropriate portion thereof. In the event of any such taking, the Tenant will have no claim upon the Landlord for the value of its property or the unexpired portion of the term hereof, but the parties will each be entitled to separately advance their claims for compensation for the loss of their respective interests and to receive and retain such compensation as may be awarded to each respectively. If an award of compensation made to the Landlord specifically includes an award for the Tenant, the Landlord will account for that award to the Tenant and vise versa.

28. **Condemnation**: A condemnation of the Building or any portion of the Premises will result in termination of this Lease. The Landlord will receive the total of any consequential damages awarded as a result of the condemnation proceedings. All future rent installments to be paid by the Tenant under this lease will be terminated.

29. **Tenant's Repairs and Alterations**:

a. The Tenant covenants with the Landlord to occupy the Premises in a tenant-like manner and not to permit waste. The Tenant will at all times and at its sole expense, subject to the Landlord's repair, maintain and keep the Premises, reasonable wear and tear, damage by fire, lightning, tempest, structural repairs, and repairs necessitated from hazards and perils against which the Landlord is required to insure excepted. Without limiting the generality of the foregoing, the Tenant will keep, repair, replace and maintain all glass, wiring, pipes, mechanical apparatus, and all restaurant fixtures and equipment belonging to Landlord in, upon or serving the Premises in good and tenantable repair at its sole expense. When it becomes (or, acting reasonably, should have become) aware of same, the Tenant will notify the Landlord of any damage to or deficiency or defect in any part of the Premises or the Building. The Tenant will not use or keep any device which might overload the capacity of any floor, wall, utility, electrical or mechanical facility or service in the Premises or the Building.

b. The Tenant covenants with the Landlord that the Landlord, its servants, agents and workmen may enter and view the state of repair of the Premises and that the Tenant will repair the Premises according to notice in writing received from the Landlord, subject to the Landlord's repair obligations. If the Tenant refuses or neglects to repair as soon as reasonably possible after written demand, the Landlord may, but will not be obligated to, undertake such repairs without liability to the Tenant for any loss or damage that may occur to the Tenant's merchandise, fixtures or other property or to the Tenant's business by reason thereof, and upon completion thereof, the Tenant will pay, upon demand, as Additional Rent, the Landlord's cost of making such repairs plus fifteen percent (15%) thereof for overhead and supervision.

c. The Tenant will not make or have other make alterations, additions or improvements or erect or have others erect any partitions or install or have other install any trade fixtures, exterior signs, floor covering, interior or exterior lighting, plumbing fixtures, shades, awnings, exterior decorations or make any changes to the Premises or otherwise without first obtaining the Landlord's written approval thereto, such written approval not to be reasonably withheld in the case of alterations, additions or improvements to the interior of the Premises.

d. The Tenant will not install in or for the Premises any special locks, safes or apparatus for air-conditioning, cooling, heating, illuminating, refrigerating or ventilating the Premises without first obtaining the Landlord's written approval thereto. Locks may not be added or changed without the prior written agreement of both the Landlord and the Tenant.

e. When seeking any approval of the Landlord for Tenant repairs as required in this Lease, the Tenant will present to the Landlord plans and specification of the proposed work which will be subject to the prior approval of the Landlord, not to be unreasonably withheld or delayed.

f. The Tenant will promptly pay all contractors, material suppliers and workman so as to minimize the possibility of a lien attaching to the Premises or the Building. Should any claim of lien be made or filed the Tenant will promptly cause the same to be discharged.

g. The Tenant will be responsible at its own expense to replace all electric light bulbs, tubes, ballasts or fixtures serving the Premises.

30. ~~Landlord's Repairs: The Landlord covenants and agrees to effect at its expense, repairs of a structural nature to the structural elements of the roof, foundation and outside walls of the Building, whether occasioned or necessitated by faulty workmanship, materials, improper installation, construction defects or settling, or otherwise, unless such repair is necessitated by the negligence of the Tenant, its servants, agents, employees or invitees, in which event the cost of such repairs will be paid by the Tenant together with an administration fee of fifteen percent (15%) for the Landlord's overhead and supervision.~~

31. Care and Use of Premises:

a. The Tenant will promptly notify the Landlord of any damage, or of any situation that may significantly interfere with the normal use of the Premises or to any furnishings supplied by the Landlord.

b. The Tenant will dispose of its trash in a timely, tidy, proper and sanitary manner.

c. The Tenant will not engage in any illegal trade or activity on or about the Premises.

d. The Tenant will comply with standards of health, sanitation, fire, housing and safety as required by law.

e. The hallways, passages and stairs of the building in which the Premises are situated will be used for no purpose other than going to and from the Premises and the Tenant will not in any way encumber those areas with boxes, furniture or other material or place or leave rubbish in those areas.

32. Surrender of Premises: The Tenant covenants to surrender the Premises, at the expiration of the tenancy created in this Lease, in the same condition as the Premises were in upon delivery of possession under this Lease, reasonable wear and tear, damage by fire or the elements, and unavoidable casualty excepted, and agrees to surrender all keys for the Premises to the Landlord at the place then fixed for payment of rent and will inform the Landlord of all combinations to locks, safes and vaults, if any. All alterations, additions and improvements constructed or installed in the Premises and attached in any manner to the floor, walls or ceiling, including any leasehold improvements, equipment, floor covering or fixtures (including trade fixtures), will remain upon and be surrendered with the Premises and will become the absolute property of the Landlord except to the extent that the Landlord requires removal thereof. Should the Tenant abandon the Premises or should this Lease be terminated before the proper expiration of the term due to default on the part of the Tenant the, in such event, as of the moment of default of the Tenant all trade fixtures and furnishings of the Tenant (whether or not attached in any manner to the Premises) will, except to the extent the Landlord requires the removal thereof become and be deemed to be the property of the Landlord without indemnity to the Tenant and as liquidated damages in respect of such default but without prejudice to any other right or remedy of the Landlord. Notwithstanding that any trade fixtures, furnishings, alterations, additions, improvements or fixtures are or may become the property of the Landlord, the Tenant

will forthwith remove all or part of the same and will make good any damage caused to the Premises resulting from the installation or removal thereof, and at the Tenant's expense, should the Landlord so require by notice to the Tenant. If the Tenant, after receipt of such notice from the Landlord, fails to promptly remove any trade fixtures, furnishings, alterations, improvements and fixtures in accordance with such notice, the Landlord may enter into the Premises and remove therefrom all or part of such trade fixtures, furnishings, alterations, additions, improvements and fixtures without any liability and at the expense of the Tenant, which expense will forthwith be paid by the Tenant to the Landlord. The Tenant's obligation to observe or perform the covenants contained herein will survive the expiration or the termination of the term of this Lease.

33.     Hazardous Materials: The Tenants will not keep or have on the Premises any article or thing of a dangerous, flammable, or explosive character that might unreasonably increase the danger of fire on the Premises or that might be considered hazardous by any responsible insurance company.

34.     Notices: For any matter relating to his tenancy, whether during or after this tenancy has been terminated:

     a.     the address of the Tenant is the Premises during this tenancy, and

     b.     the address of the Landlord is 111 W WASHINGTON, SUITE 1020, CHICAGO, IL 60602, both during this tenancy and after it is terminated.

     c.     The Landlord or the Tenant may, on written notice to each other, change their respective addresses for notice under this Lease.

35.     Right to Show Premises: The Tenant acknowledged that the Landlord or its agent will have the right to enter the Premises at all reasonable times to show them to prospective purchasers, encumbrances, lessees or assignees, and may also during the 120 days preceding the termination of the terms of this Lease, place upon the Premises the usual type of notice to the effect that the Premises are for rent, which notice the Tenant will permit to remain on them.

36.     No Waiver: No provision of this Lease will be deemed to have been waived by the Landlord unless a written waiver from the Landlord has first been obtained and, without limiting the generality of the foregoing, no acceptance of rent subsequent to any default and no condoning, excusing or overlooking by the Landlord on previous occasion or any default nor any earlier written waiver will be taken to operate as a waiver by the Landlord or in any way to defeat or affect the rights and remedies of the Landlord.

37.     Landlord's Performance: Notwithstanding anything to the contrary contained in this Lease, if the Landlord is delayed or hindered or prevented from the performance of any term, covenant or act required under this Lease by reason of strikes, labor troubles, inability to procure materials or services, power failure, restrictive governmental laws or regulations, riots, insurrection, sabotage, rebellion, war, act of God or other reason, whether of a like nature or not, which is not the fault of the Landlord, then performance of such term, covenant or act will be excused for the period of the delay and the Landlord will not be entitled to perform such term, covenant or act within the appropriate time period and after the expiration of the period of such delay.

38.     Assignment: Tenant shall not assign or sublease the Premises without the written consent of the Landlord first obtained. Any attempted assignment or sublease by the Tenant without the written consent of the Landlord shall be deemed null and void and shall be considered an Event of Default.

39.     Remedies Cumulative: No reference to or exercise of any specific right or remedy by the Landlord will prejudice or preclude the Landlord from any other remedy whether allowed at law or in equity or expressly provided for in this Lease. No such remedy will be exclusive or dependent upon any other such remedy, but the Landlord my from time to time exercise any one or more of such remedies independently or in combination.

40.     Landlord May Perform: If the Tenant fails to observe, perform or keep any of the provisions of this Lease to be observed, performed or kept by it and such failure is not rectified within the time limits specified in this Lease, the Landlord my, but will not be obliged to, at its discretion and without prejudice, rectify the default of the Tenant. The Landlord will have the right to enter the Premises for the purpose of correcting or remedying any default of the Tenant and to remain until the default has been corrected or remedied. However, any expenditure by the Landlord incurred in any correction of a default of the Tenant will not be deemed to waive or release the Tenant's default or the Landlord's right to take any action as my be otherwise permissible under this Lease in the case of any default.

41.  **General Provisions:**

a.  This Lease will extend to and be binding upon and inure to the benefit of the respective heirs, executors, administrators, successors and assigns of each party to this Lease. All covenants are to be construed as conditions of this Lease.

b.  All sums payable by the Tenant to the Landlord pursuant to any provision of this Lease will be deemed to be Additional Rent and will be recovered by the Landlord as rental arrears.

c.  Where there is more than one Tenant executing this Lease, all Tenants are jointly and severally liable for each other's acts, omissions and liabilities pursuant to this Lease.

d.  The Tenant will be charged an additional amount of $50.00 for each N.S.F. check or check returned by the Tenant's financial institution.

e.  This Agreement may be executed in counterparts.

f.  This Lease will constitute the entire agreement between the Landlord and the Tenant. Any prior understanding or representation of any kind preceding the date of this Lease will not be binding on either party except to the extent incorporated in this Lease. In particular, no warranties of the Landlord not expressed in this Lease are to be implied.

IN WITNESS WHEREOF the parties hereto have executed this Lease on the date first above written.

LANDLORD:
HOLDINGS GROUP LLC-MONROE 1 HOLDINGS GROUP LLC

By: _____
Jaroslaw Kurzac, Manager

TENANT:

SMILEY AUTO GROUP, LLC.,

By: _____, its Manager
BUJAR ISMAJLAJ AND MUKADEM M. ISMAJLI
Title: Authorized Officer

_____
BUJAR ISMAJLAJ AND MUKADEM M. ISMAJLI, Personally

Page 11 of 11

# EXHIBIT B

## ASSIGNMENT OF INTEREST

For and in consideration of SIX THOUSAND AND NO/100 DOLLARS* ($6,000.00) and other good and valuable consideration, the receipt of which is hereby acknowledged, the undersigned hereby assigns ONE HUNDRED PERCENT (100%) of his right, title, interest, management and membership in SMILEY AUTO GROUP, LLC to LC SMILEY OTTO, an Arizona limited liability company.

The undersigned certifies that Bujar Ismajlaj, is the sole member and manager of SMILEY AUTO GROUP, LLC and that no other person has any interest in the company.

The attached, Exhibit A, is a list of all personal property and equipment that SMILEY AUTO GROUP, LLC owns, without any liens, which will be transferred along with this assignment of interest.

The $6,000.00 shall be paid as follows: $3,000.00 payment due upon signing this agreement and $3,000.00 due within 21 days

_____
Bujar Ismajlaj

Date: 1/28/22

EXHIBIT C

This instrument prepared by:
Law Offices of Robert J. Ralis
2911 N. Cicero Ave.
Chicago, IL 60641

Mail future tax bills to:
Village of Maywood, an Illinois municipal
corporation
40 Madison Street
Maywood, IL 60153

Mail this recorded instrument to:
Michael A. Marrs, Klein, Thorpe & Jenkins, Ltd.,
120 S. LaSalle Street, Suite 1710
Chicago, Illinois 60603

Doc#. 2327146118 Fee: $107.00
Karen A. Yarbrough
Cook County Clerk
Date: 09/28/2023 11:56 AM Pg: 1 of 3

Dec ID 20230901628095

## TRUSTEE'S DEED

This Indenture, made this 26 th day of September, 2023, between N. Neville Reid, not individually but as Trustee for the Bankruptcy Estate of LLC1 07CH12487, debtor, under bankruptcy case number 13-49315 in the United States Bankruptcy Court for the Northern District of Illinois, party of the first part, and Village of Maywood, an Illinois municipal corporation of Maywood, Illinois , party of the second part.

Witnesseth. That said party of the first part, in consideration of the sum of Ten Dollars ($10.00), and other good and valuable considerations in hand paid, does hereby grant, sell, and convey unto said party of the second part, the following described real estate, situated in COOK County, State of Illinois, to wit:

Lot 5 in Block 14, in Stannard's Second Addition to Maywood, a subdivision of the South Half of the East Half of the Southwest Quarter of Section 14, Township 39 North, Range 12, East of the Third Principal Meridian, in Cook County, Illinois

and

Lot 6 in Block 14 in Stannard's Second Addition to Maywood in Section 14, Township 39 North, Range 12 East of the Third Principal Meridian, in Cook County, Illinois

Permanent Index Number(s): 15-14-329-026-0000
Property Address: 315 W. Roosevelt Rd, Maywood, IL 60153

together with the tenements and appurtenances thereunto belonging.

Subject, however, to any and all unpaid real estate taxes payable on or with respect to the real estate described above and all liens on the real estate described securing any and all such taxes whenever arising or accrued up through September 26, 2023, and thereafter, and all covenants, restrictions, and conditions of record, applicable zoning laws, ordinances, and other governmental regulations.

To Have and To Hold the same unto said party of the second part, and to the proper use, benefit, and behold forever of said party of the second part.

This deed is executed pursuant to and in the exercise of the power and authority granted to and vested in said Trustee by the terms of said deed or deeds in trust delivered to said Trustee in pursuance of the trust agreement above mentioned. This deed is made subject to the lien of every trust or mortgage (if any there be) of record in said county given to secure the payment of money, and remaining unreleased at the date of the delivery hereof.

This property is Exempt under paragraph
_____ of the Real Estate Transfer Tax Act (35 ILCS 200/31-45

_Angela Smith_ as Agent, Date 9/19/2023

EXEMPT UNDER THE PROVISIONS OF PARAGRAPH
( 5 ), SECTION ( A ) OF THE VILLAGE OF
MAYWOOD REAL ESTATE TRANSFER TAX ORDINANCE.

_Tanika Skipper_    9-19-2023
AUTHORIZED SIGNATURE    DATE

FOR USE IN: ALL STATES
Page 1 of 2

ATG FORM 4108
© ATG (2/05)

**Individual Trustee(s)**

In Witness Whereof, said party of the first part has caused its name to be signed to these presents the day and year first above written.

N. Neville Reid, not individually but solely in his capacity as bankruptcy trustee for LLC 1 07CH12487, debtor

N. Neville Reid, Trustee

STATE OF ILLINOIS     )
                             ) SS

COUNTY OF COOK     )

I, the undersigned, a Notary Public in and for the County and State aforesaid, DO HEREBY CERTIFY that N. Neville Reid, not individually but solely in his capacity as bankruptcy trustee for LLC 1 07CH12487, debtor aforesaid, personally known to me to be the same person whose name is subscribed to the foregoing instrument as such Trustee, appeared before me this day in person and acknowledged that he signed and delivered said instrument as his free and voluntary act for the uses and purposes set forth therein.

Given under my hand and Notarial Seal this 15 day of September, 2023.

Danielle V. Gac
_____
Notary Public

Exempt under the provisions of paragraph _____

DANIELLE V GAC
Official Seal
Notary Public - State of Illinois
My Commission Expires Apr 17, 2027

DANIELLE V GAC
Official Seal
Notary Public - State of Illinois
My Commission Expires Apr 17, 2027

FOR USE IN: ALL STATES
Page 2 of 2

ATG FORM 4108
© ATG (2/05)

## STATEMENT BY GRANTOR AND GRANTEE

The grantor or the grantor's agent affirms that, to the best of his or her knowledge, the name of the grantee shown on the deed or assignment of beneficial interest in a land trust is either a natural person, an Illinois corporation, or foreign corporation authorized to do business or acquire and hold title to real estate in Illinois, a partnership authorized to do business or acquire and hold title to real estate in Illinois, or other entity recognized as a person and authorized to do business or acquire and hold title to real estate under the laws of the State of Illinois.

Dated 9/21/2 _____

_____
Signature of Grantor or Agent

Subscribed and sworn to before me this

21st day of September, 2021
Day        Month        Year

_____
Notary Public

> MALGORZATA M BOGDANOWICZ
> Official Seal
> Notary Public - State of Illinois
> My Commission Expires Oct 15, 2025

The grantee or the grantee's agent affirms and verifies that the name of the grantee shown on the deed or assignment of beneficial interest in a land trust is either a natural person, an Illinois corporation, or foreign corporation authorized to do business or acquire and hold title to real estate in Illinois, a partnership authorized to do business or acquire and hold title to real estate in Illinois, or other entity recognized as a person and authorized to do business or acquire and hold title to real estate under the laws of the State of Illinois.

Dated September 20, 2023 _____

_____
Signature of Grantee or Agent
Attorney-in-fact

NOTE: Any person who knowingly submits a false statement concerning the identity of a grantee shall be guilty of a Class C misdemeanor for the first offense and of a Class A misdemeanor for subsequent offenses.

(Attach to deed or ABI to be recorded in Cook County, Illinois, if exempt under provisions of Section 4 of the Illinois Real Estate Transfer Tax Act.)

Subscribed and sworn to before me this

20 day of September, 2023
Day        Month        Year

_____
Notary Public

> DAISY TORRES
> OFFICIAL SEAL
> Notary Public, State of Illinois
> My Commission Expires
> November 28, 2026

FOR USE IN: IL

ATG FORM 4340
© ATG (REV 12/04)

# Exhibit D

Abandonment Order From

Bankruptcy Trustee

Case 13-49315   Doc 81   Filed 08/02/16   Entered 08/03/16 11:46:58   Desc Main
Document      Page 1 of 1

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
Eastern Division

In Re:                                    )        BK No.:   13-49315
LLC 1 07CH12487                           )
                                          )
                                          )        Chapter: 7
                                          )        Honorable Timothy A. Barnes
                                          )
            Debtor(s)                     )

## ORDER COMPELLING TRUSTEE TO ABANDON PROPERTY

THIS MATTER COMING ON TO BE HEARD on the Motion of the Debtor to Compel Abandonment of Property; due and proper notice having been given and the Court being duly advised in the premises:

IT IS HEREBY ORDERED as follows:

1. The real property commonly known as 415 W. Roosevelt Road, Maywood, Illinois 60153 be and the same is hereby abandoned and this Order shall constitute said abandonment;

2. The notice period of fourteen days set forth in Bankruptcy Rule 6007 of the Federal Rules of Bankruptcy Procedure be and the same is shortened from fourteen days to seven days;

3. Any and all rents collected by the Trustee, N. Neville Reid, be and the same are not abandoned as a result of this Order;

4. Any claims to collect rent that accrued prior to the date of this Order are not abandoned as a result of this Order; and

5. Any and all rents that accrue after the date of this Order shall be deemed abandoned and not be property of the Bankruptcy Estate.

Enter:

Dated: 8/2/16

United States Bankruptcy Judge

**Prepared by:**
John H. Redfield   Attorney No. 2298090
Crane, Heyman, Simon, Welch & Clar
135 S. LaSalle St., Suite 3705
Chicago, Illinois 60603
(312) 641-6777
W:\JHR\LLC 1\Compel Abandonment.Ord

Rev: 20151029_bko