UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SMILEY AUTO GROUP, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 23 C 16333 |
| v. | ) |
| | ) Judge Sara L. Ellis |
| VILLAGE OF MAYWOOD, JAMES KRISCHKE, DARYL FAIRLEY, THEODORE YANCY, ANGELA SMITH, and WALTER DUNCAN, | ) ) ) ) ) |
| Defendants. | ) |

**OPINION AND ORDER**

Beginning in 2018, Plaintiff Smiley Auto Group, LLC ("Smiley") occupied the premises located at 315 West Roosevelt, Maywood, Illinois (the "Premises"). Defendant Village of Maywood (the "Village") purchased the Premises out of bankruptcy in September 2023 and proceeded to evict Smiley soon thereafter. Smiley has turned to this Court to complain about the eviction, filing suit against the Village and several of its employees: Village Manager James Krischke, Lieutenant Daryl Fairley, Acting Chief of Police Theodore Yancy, Director of Community Development Angela Smith, and Director of Building and Code Walter Duncan. The Court dismissed Smiley's first amended complaint for failure to state a federal claim, deferring consideration of the state law claims until Smiley pleaded a sufficient basis for subject matter jurisdiction. Doc. 30. In its second amended complaint, Smiley again brings claims for due process violations under the U.S. and Illinois Constitutions (Counts I and II), illegal seizure in violation of the U.S. and Illinois Constitutions (Counts III and IV), wrongful eviction (Count V), trespass (Count VI), and conversion (Count VII). Defendants have moved to dismiss Smiley's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). Because Smiley again has

not alleged that it had a protected property interest that would allow it to pursue its federal due process and illegal seizure claims, the Court dismisses Smiley's federal claims with prejudice and the state law claims without prejudice to refiling in state court.

## BACKGROUND[1]

On February 27, 2018, Holdings Group LLC – Monroe 1 Holdings Group LLC ("Holdings Group"), as the authorized agent for LLC 1 07 CH12487 ("Owner"), and Smiley entered into a commercial lease agreement for the Premises. The lease had a one-year term, starting March 1, 2018. It provided that, if Smiley continued to occupy the Premises with Holdings Group's written consent after the expiration of this term, without any further written agreement, Smiley would become a month-to-month tenant. If Smiley continued to occupy the Premises after the one-year term without Holdings Group's written consent, the lease provided that Smiley would instead become a tenant at will. The lease described the sole permitted use of the Premises as automotive sales and indicated that Holdings Group could terminate the lease without notice if Smiley ceased operating a business from the Premises or used it for any purpose other than automotive sales. If Smiley abandoned the Premises, the lease provided that Holdings Group could enter by any means, treat any personal property left on the Premises as abandoned, and dispose of such personal property in any manner it deemed proper. Pursuant to the lease, Smiley could not assign or sublease the Premises without Holdings Group's written consent, and

---

[1] The Court takes the facts in the background section from Smiley's second amended complaint and exhibits attached thereto and presumes them to be true for the purpose of resolving Defendants' motion to dismiss. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013). The Court also considers relevant bankruptcy court filings and the public record searches that Defendants attached to their filings. *See Tobey v. Chibucos*, 890 F.3d 634, 647–48 (7th Cir. 2018) ("Although a court may generally take judicial notice of public records, under Federal Rule of Evidence 201, a court may judicially notice only a fact that is not subject to reasonable dispute."); *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) (court may consider "documents that are central to the complaint and are referred to in it" in ruling on a motion to dismiss).

2

any amendments, modifications, or additional obligations had to be evidenced in writing and signed by each party.

Smiley took possession of the Premises in March 2018 and operated a used car dealership there until January 2022. After the initial term expired, the Owner consented to Smiley's continued occupation of the Premises in exchange for Smiley's assumption of the costs of maintaining the Premises. Smiley does not allege that these modifications to the lease terms were evidenced in writing or signed by the parties. On January 28, 2022, Smiley's sole member assigned his membership interest to LC Smiley Otto ("Otto"), an Arizona limited liability company. Tiffany Webb manages both Smiley and Otto. After accepting the assignment of Smiley's membership interest, Webb took possession of the Premises as Smiley's manager. Webb proceeded to move various items of personal property, including appliances, vehicles, clothing, and papers, to the Premises. To protect and secure the Premises, Webb contracted with Frontpoint Security ("Frontpoint") to install and maintain an alarm system at the Premises. Frontpoint called the Maywood Police to the Premises on several occasions after the alarm on the Premises went off.

On December 13, 2013, prior to Smiley's lease of the Premises, the Owner filed a Chapter 7 bankruptcy petition, with the bankruptcy court appointing a Chapter 7 Trustee to administer the assets of the estate, including the Premises. On August 2, 2016, the bankruptcy court entered an order compelling the Trustee to abandon the property at 415 W. Roosevelt Road in Maywood, Illinois ("415 W. Roosevelt"), with 415 W. Roosevelt then reverting to the Owner.[2] The bankruptcy court granted the Owner's motion for voluntary dismissal in October

---

[2] Although Smiley alleges that the order of abandonment covered the Premises, the actual order as well as public property records contradict this allegation and so the Court does not accept it as true. *See Esco v. City of Chicago*, 107 F.4th 673, 678–79 (7th Cir. 2024) ("[W]hen an exhibit . . . 'incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a

3

2017. On appeal, the district court vacated the dismissal in October 2018 and returned the Owner's bankruptcy case to the bankruptcy court. The Trustee knew that Smiley occupied the Premises and mentioned the Smiley lease in various filings in the bankruptcy case. He also sought to take an examination of Webb in 2020 to find out more information about Smiley and its possession of the Premises. In 2023, the Trustee solicited bids to sell the Premises. Pursuant to 11 U.S.C. § 363(b)(1), the bankruptcy court approved the sale of the Premises to the Village for $360,000 on July 19, 2023.[3] The Village took title "as is, where is," Doc. 39-3 at 1, and the Trustee represented that to the best of his knowledge, no leases encumbered the Premises. On September 26, 2023, the deal closed, and the Village became the owner of the Premises. The Village knew that Smiley had possession of the Premises because the Village Clerk had issued, and later renewed on at least two occasions, a business license allowing Smiley to operate its business at the Premises.

On October 2, 2023, various Village employees, including members of the Maywood Police, Public Works, and Planning and Development Departments appeared at the Premises to evict Smiley. They did not have a court order or enlist the help of the Cook County Sheriff. And Webb and Smiley did not receive a notice of eviction or a forcible detainer complaint. Village employees broke the lock that Webb had installed on the Premises and had a locksmith change the locks. They disposed of Smiley's personal property by placing it in a Village dump truck. They also disconnected the cameras Webb had installed on the Premises, which alerted Webb to the eviction. When Webb arrived at the Premises that day, Yancy informed her and the other Smiley representative that they should leave the Premises or risk arrest.

---

motion to dismiss.'" (quoting *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013))). Smiley did not occupy 415 W. Roosevelt, which encompasses property index numbers separate from that associated with the Premises.

[3] The bankruptcy court entered an amended order approving the sale on August 17, 2023.

Despite Smiley's demands that the Village place it back into possession of the Premises, the Village has refused. The Village represents that it returned Smiley and Webb's personal property to the Premises, but Smiley and Webb cannot verify that because they have not had access to the Premises since October 2, 2023. The Village has advised Smiley that Smiley can only remove personal property from the Premises if it provides the Village with documentation proving its ownership of that property and that if Smiley cannot do so, the Village will declare the property to be surplus and dispose of it.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

Defendants move for dismissal of the second amended complaint on essentially the same grounds they raised with respect to Smiley's deficient first amended complaint, including that

Smiley did not have a legal right to possess the Premises at the time of the eviction.[4] The Court previously focused on Smiley's federal claims, and the Court finds it appropriate to do so again, given that if the federal claims cannot proceed, the Court would decline to exercise supplemental jurisdiction over the state claims. *See* 28 U.S.C. § 1367(c)(3).

Smiley's federal due process and illegal seizure claims both require allegations that Smiley had a property interest in the Premises.[5] "[T]he threshold question in any due process challenge is whether a protected property or liberty interest exists." *Citizens Health Corp. v. Sebelius*, 725 F.3d 687, 694 (7th Cir. 2013); *Haney v. Winnebago Cnty. Bd.*, No. 3:19-cv-50191, 2020 WL 1288881, at *6 (N.D. Ill. Mar. 18, 2020) ("Both substantive and procedural due process claims require a plaintiff to identify a constitutionally protected right to property or liberty."). Similarly, under the Fourth Amendment, "[a] 'seizure' of property occurs when there

---

[4] Defendants also argue that Smiley cannot sue under Illinois law because as of October 11, 2024, it had been involuntarily dissolved as a corporation in Illinois. *See* Doc. 39-4 (Illinois Secretary of State business entity search results for Smiley listing its status as "involuntary dissolution on 10-11-2024"); Doc. 54-1 (same). Smiley represents that it filed for reinstatement in April 2025, which revived its corporate status and cured any potential defect in its ability to maintain suit during the dissolution period. *See* Doc. 43 at 11; 805 Ill. Comp. Stat. 180/35-40(d) ("Upon the filing of the application for reinstatement, the limited liability company existence shall be deemed to have continued without interruption from the date of the issuance of the notice of dissolution, and the limited liability company shall stand revived with the powers, duties, and obligations as if it had not been dissolved; and all acts and proceedings of its members, managers, officers, employees, and agents, acting or purporting to act in that capacity, and which would have been legal and valid but for the dissolution, shall stand ratified and confirmed."). Defendants accepted this representation in their reply, noting only that Smiley had included a false statement about its corporate status in the second amended complaint. The Court questions whether the Illinois Secretary of State has actually reinstated Smiley as an LLC given that the Court's recent search on the Illinois Secretary of State's website continues to reflect Smiley's involuntary dissolution as of October 11, 2024. For purposes of deciding this motion, however, the Court assumes that Smiley has the ability to continue to pursue this suit, given that it instituted the case while it had legal status, the claims accrued before its involuntary dissolution, and the Illinois LLC Act allows a dissolved LLC to take any actions, including filing suit, that are "necessary or appropriate to wind up its business and affairs and terminate." 805 Ill. Comp. Stat. 180/35-30(d).

[5] While the Court focuses on the federal claims, it notes that Smiley's state law due process and illegal seizure claims also require allegations that Smiley had a protected property interest. *See Haaayy, LLC v. Dep't of Fin. & Pro. Regul.*, 2024 IL App (1st) 221833, ¶ 44 ("The due process clauses of the United States and Illinois Constitutions are triggered only when a constitutionally protected liberty or property interest is at stake."); *People v. Burns*, 2016 IL 118973, ¶ 19 ("This court interprets the search and seizure clause of the Illinois Constitution in 'limited lockstep' with its federal counterpart." (citation omitted)).

is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). To qualify as a constitutionally protected property interest, the right must be created by "existing rules or understandings that stem from an independent source such as state law." *Kim Constr. Co. v. Bd. of Trs.*, 14 F.3d 1243, 1245–46 (7th Cir. 1994) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)). A plaintiff "must have more than a unilateral expectation of" the claimed interest; he "must, instead, have a legitimate claim of entitlement to it." *Roth*, 408 U.S. at 577.

As in the first amended complaint, Smiley again attempts to rely on the lease as the source of its property interest. A valid lease can supply the required property interest. *See Wakley v. City of Indianapolis*, 776 F. App'x 376, 378 (7th Cir. 2019) ("A due-process claim requires the deprivation of a property interest, such as a leasehold."); *GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 365 (7th Cir. 2019) ("GEFT's leasehold in the Esler Property is a protected interest that can support a procedural due process claim."); *Dyson v. City of Calumet City*, 306 F. Supp. 3d 1028, 1041–42 (N.D. Ill. 2018) (plaintiff had a property interest in the leasehold property, noting the fact "that Dyson holds a leasehold property interest rather that [sic] a fee simple one does not matter"). But "the existence of a landlord-tenant relationship is a legal conclusion that [the Court] can reject at the motion to dismiss stage," requiring the Court to look closely at Smiley's allegations and the attached documents to determine whether Smiley has alleged a plausible property interest. *Dix v. Edelman Fin. Servs., LLC*, 978 F.3d 507, 514 (7th Cir. 2020).

The Court previously found that Smiley had not plausibly alleged that it had a valid possessory interest in the Premises and the personal property found therein. Doc. 30 at 7–8. Defendants maintain that Smiley has not remedied this issue in the second amended complaint,

7

while Smiley suggests that it has included sufficient additional facts to suggest that it had a property interest in the Premises because it continued to occupy the Premises beyond the one-year lease term with Holdings Group's consent in exchange for maintaining the Premises. The Court agrees with Defendants that Smiley again has not alleged a protectable property interest at the time of the eviction.

The Court first considers the effect of the Owner's bankruptcy case on Smiley's alleged interest, with the analysis not as straightforward as it would appear on first blush. The Owner's bankruptcy filing in 2013 made the Premises property of the bankruptcy estate, meaning that the Owner could not thereafter lease the Premises without permission of the bankruptcy court. *See* 11 U.S.C. § 541 (filing of a bankruptcy petition creates an estate, that includes "all legal or equitable interests of the debtor in property as of the commencement of the case"); *Ohio Land Mgmt., LLC v. Chesapeake Exploration, L.L.C.*, No. 4:15 CV 1754, 2018 WL 4680485, at *4 (N.D. Ohio Sept. 28, 2018) (automatic stay provisions of the bankruptcy code invalidated a debtor's post-petition lease of property, meaning the lessee held no interest in that property).

Smiley attempts to avoid this conclusion by pointing to the bankruptcy court's August 2, 2016 order compelling the trustee to abandon 415 W. Roosevelt. *See* Doc. 34 at 39. Indeed, an order of abandonment means that title to the abandoned property reverts to the debtor. *Morlan v. Univ. Guar. Life Ins. Co.*, 298 F.3d 609, 617 (7th Cir. 2002). But the order of abandonment in the Owner's bankruptcy case has no bearing on the property that Smiley leased, 315 W. Roosevelt. The lease agreement specified the Premises as 315 W. Roosevelt, Smiley never refers to 415 W. Roosevelt as property that it occupied, and Defendants have submitted public records that indicate that 315 W. Roosevelt and 415 W. Roosevelt have different permanent

8

index numbers associated with them.[6] Because the order of abandonment on its face did not cover the Premises, it has no relevance to this case.

But the existence of the bankruptcy case does not resolve the question at hand because Smiley entered the lease after the bankruptcy court granted the Owner's motion for voluntary dismissal in October 2017. Although the district court vacated the dismissal and reinstated the Owner's bankruptcy case in October 2018, no bankruptcy estate or automatic stay existed at the time that Smiley entered the lease. *See In re Aguirre*, No. 18-CV-07915, 2021 WL 3674612, at *8 (N.D. Ill. Aug. 19, 2021) ("Most courts that have considered the issue have held that where a bankruptcy case is dismissed (and the automatic stay is dissolved), actions taken before the case is subsequently reinstated are valid and not in violation of the automatic stay."), *aff'd sub nom. Matter of Aguirre*, 37 F.4th 427 (7th Cir. 2022). And "the general rule appears to be that courts may not retroactively impose an automatic stay that was previously lifted," *id.*, so the reinstatement of the Owner's bankruptcy case would not retroactively have voided the lease. Therefore, the Court cannot find that the Owner's bankruptcy case precludes Smiley from having ever had a valid interest in the Premises.[7]

The Court next turns to the provisions of the lease. The lease had a one-year term, starting March 1, 2018, and provided that, if Smiley continued to occupy the Premises with Holdings Group's written consent after the expiration of this term, without any further written agreement, Smiley would become a month-to-month tenant. If Smiley continued to occupy the Premises after the one-year term without Holdings Group's written consent, the lease provided

---

[6] As Defendants point out, even the Owner understood 315 W. Roosevelt and 415 W. Roosevelt to constitute different parcels, listing them separately in a 2009 bankruptcy case. *See* Doc. 54-2 at 5–6.

[7] That said, the Court questions whether the Owner had any right to lease the Premises at the time Smiley entered the lease, given that it purportedly transferred the Premises to LLC 1 CH 12487 Private Trust, Trust Number 31501222018, on January 22, 2018. *See Reid v. LLC 1 CH 12487 Private Trust*, Adv. Proceeding 19-00992, Doc. 1-6 (Bankr. N.D. Ill. Oct. 29, 2019) (quitclaim deed for 315 W. Roosevelt).

that Smiley would instead become a tenant at will. Smiley alleges that it occupied the Premises after the one-year term expired with the Owner's consent in exchange for maintenance of the property as rent. The lease, however, required any modifications to be in writing, and so Smiley has not sufficiently alleged new lease terms that would have allowed its continued occupation of the Premises without paying rent. Although it is unclear whether Smiley complied with the lease's holdover provision for a tenancy at will given that it does not allege that it ever paid the required liquidated damages or additional rent for its continued occupancy to the Owner, Holdings Group, or the Trustee, the Court nonetheless assumes for the sake of resolving this motion that Smiley became a tenant at will when the initial one-year term expired.

Even as a tenant at will, Defendants argue that Smiley cannot allege a property interest. First, they contend that Smiley lost any potential interest it had in the Premises when its sole member assigned his interest in Smiley to Otto, which created a tenancy by sufferance because the assignment violated the lease's no assignment clause. *See In re Sauk Steel Co.*, 133 B.R. 431, 437 (Bankr. N.D. Ill. 1991) ("A tenant at sufferance has no protectable property interest in continued possession of the premises."). But as the Court previously noted when addressing this argument in connection with the first amended complaint, Doc. 30 at 7 n.4, Defendants have misread the assignment of interest, which provides that the sole member of Smiley assigned his interest in Smiley to Otto, not that Smiley assigned the lease to Otto. The Court therefore cannot infer at this stage that the assignment created a tenancy by sufferance.

Alternatively, Defendants argue that Smiley lost any interest it had in the Premises when it stopped using the Premises as a used car dealership in January 2022. Under the terms of the lease, this amounted to a breach that allowed the landlord to terminate the lease without notice and deem any personal property on the Premises abandoned. Because Smiley breached the lease

in a manner that allowed for termination of the lease without notice, Smiley lost any protectable property interest it may have had in the Premises by the end of January 2022. *See Pullem v. Evanston Young Men's Christian Ass'n*, 124 Ill. App. 3d 264, 268 (1984) ("Illinois case law recognizes that a tenant who retains possession of a leasehold after termination of the lease has no protectible property interest in the leasehold."). Therefore, Smiley had no property interest at the time that Defendants evicted Smiley on October 2, 2023, and its federal claims fail.

Because further amendment would be futile, the Court dismisses Smiley's federal claims with prejudice. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 734–35 (7th Cir. 2014) (affirming dismissal with prejudice of first amended complaint after initial complaint was dismissed without prejudice). Further, because the Court dismisses the federal claims, the Court declines to exercise supplemental jurisdiction over the remaining state law claims and dismisses those claims without prejudice to refiling in state court. *See* 28 U.S.C. § 1367(c); *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999) ("[I]t is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial.").

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion to dismiss [39]. The Court dismisses Smiley's federal claims with prejudice and his state law claims without prejudice to refiling in state court. Case terminated.

Dated: February 23, 2026

SARA L. ELLIS
United States District Judge